IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2015 at Knoxville

## FREDERICK ALEXANDER AVERY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2006-C-2451      Cheryl A. Blackburn, Judge**

_____

**No. M2014-02427-CCA-R3-PC – November 6, 2015**

_____

The petitioner, Frederick Alexander Avery, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Frederick Alexander Avery.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On September 12, 2006, the petitioner, his brother, David Avery, and his sister, Iris Avery, were indicted by the Davidson County Grand Jury for two counts of especially aggravated robbery and two counts of attempted first degree murder based on their June 23, 2006 robbery of a couple, Stephanie Regen and Samuel Gift, whose throats were slit by David Avery during the robbery. Iris Avery testified against her brothers at their joint trial, which concluded with each of them being convicted of the aggravated robbery of Ms. Regen, the especially aggravated robbery of Mr. Gift, the reckless endangerment of Ms. Regen, and the attempted second degree murder of Mr. Gift. The trial court sentenced David Avery to an effective term of forty-nine years and sentenced

the petitioner as a violent offender to a life sentence without the possibility of parole. Their convictions and sentences were affirmed by this court on direct appeal, and our supreme court denied their applications for permission to appeal. State v. David Anthony Avery and Frederick Alexander Avery (a/k/a Alex Avery), No. M2008-01809-CCA-R3-CD, 2009 WL 4724430, at *1 (Tenn. Crim. App. Dec. 10, 2009), perm. app. dismissed (Tenn. Mar. 1, 2010), perm. app. denied (Tenn. Apr. 23, 2010), perm. app. denied (Tenn. Feb. 16, 2012).

Both victims testified at trial. Ms. Regan related the following: the petitioner's brother and sister, David and Iris Avery, came to her and Mr. Gift's apartment on the morning of June 23, 2006, to purchase drugs; David Avery returned to the apartment with the petitioner at about 4:00 p.m.; David Avery followed her to the kitchen where their safe was located and slit her throat as she was weighing out drugs, grabbed the contents of the safe, and yelled out to the petitioner, who had remained in the living room with Mr. Gift, something to the effect of "It's on"; David Avery led her to her bedroom, asked her where their gun was kept, and attempted to cut her again; the petitioner brought Mr. Gift into the bedroom and David Avery slit his throat from ear to ear; the petitioner and his brother discussed whether to shoot her and Mr. Gift; and the petitioner and his brother eventually left without shooting them after she and Mr. Gift begged for their lives. Ms. Regan identified the petitioner and his brother as the perpetrators. Id. at *1-2.

Mr. Gift's testimony included the following account: the petitioner pushed him back onto the couch when he attempted to go to Ms. Regen's aid in the kitchen; the petitioner told him to "be cool" and assured him that neither he nor Ms. Regen would be hurt; the petitioner then hit him with a drill and physically fought him; David Avery called out for the petitioner to bring him into the bedroom and, once they were there, instructed the petitioner to put him on his knees on the floor; David Avery ordered the petitioner, who had a gun, to shoot him; the petitioner indicated he did not want to kill him and David Avery, upset at the petitioner's hesitation, then grabbed Mr. Gift by the back of his head and slit his throat; the petitioner and David Avery discussed whether to shoot him and Ms. Regan; and the men eventually left without shooting them after he told them he was going to die anyway and assured them that he and Ms. Regen would say they did not know who had robbed them. Id. at *3. Mr. Gift was able to identify David Avery as his attacker but was unable to positively identify the petitioner. Id. at *4.

During her testimony, the petitioner's sister, Iris Avery, related how she overheard the petitioner and David Avery "discussing 'going to get some money,' which she understood to mean that they were going to commit a robbery"; how she drove them to the victims' apartment and waited for them outside; how they emerged from the apartment ten or fifteen minutes later and the smiling petitioner told her that nobody was dead; how the petitioner gave her $500 for her help; and how David Avery told her the

following day, after the petitioner had been arrested, "that the robbery became violent." Id. at \*5.

On October 15, 2010, the petitioner filed a *pro se* petition for post-conviction relief in which he raised several claims, including ineffective assistance of counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that counsel was ineffective for failing to consult with him at critical stages of the trial process, failing to render advice sufficient for him to make an informed decision about testifying in his own defense, and failing to file and request hearings on necessary pretrial motions.

At the March 9, 2011 evidentiary hearing, the petitioner testified that trial counsel was his second attorney, replacing another attorney who represented him for "a month or two[.]" He said that trial counsel talked to him for only a few minutes about testifying, telling him he had a right to testify but encouraging him not to. He wanted to testify, however, because he believed that was "the only way the truth would come out." The petitioner testified that he started reading up on the law when he got to prison and realized that "there was a lot of stuff . . . that was messed up before trial, during trial, after trial." He said he wanted his trial severed from his co-defendant's, but every time he brought it up, trial counsel changed the subject. Trial counsel also failed to object when the prosecutor, at several points in the trial, mixed up his name with that of his co-defendant. The petitioner testified his chief complaints were that it took him too long to go to trial and his case was not severed from his co-defendant, which resulted in some of the evidence of his co-defendant's bad acts "rubb[ing] off on [him]."

On cross-examination, the petitioner acknowledged that he knew it was his decision whether or not to testify. He further acknowledged that he had given a statement to police admitting his involvement in the crimes and that his statement could have been introduced if he testified at trial and provided a different version of events. He insisted, however, that had he testified he could have "explained what really happened" and that he told counsel "plenty of times" that he wanted to testify. The petitioner acknowledged he signed a form stating that he did not want to testify but said that his mind was elsewhere and he did not read it. He was unable to say why he told the judge that he did not want to testify.

On redirect examination, the petitioner testified that he felt intimidated "the whole time." Upon questioning by the post-conviction court, the petitioner testified that he felt intimidated because "this was a new world" to him. He acknowledged, however, that he had previously been before a court when pleading guilty to second degree murder.

3

When the court asked the petitioner what he would have said had he testified at trial, he related the following: he went to the victims' apartment with his brother only because his brother told him that Mr. Gift owed him money. He did not bring any weapons with him because he knew nothing about any robbery. When they arrived at the apartment, "that's when he – all this stuff happened." After his brother "supposedly attacked" Mr. Gift's girlfriend, the petitioner asked Mr. Gift whether he had a gun and Mr. Gift put his hand in his pocket and pulled out a bank roll of money. The petitioner said he took the money from Mr. Gift and put it in his own pocket. The petitioner stated that Mr. Gift was not hurt at the time he took his money from him. His brother then took Mr. Gift into the back room and cut his throat, but the petitioner was not there and did not see it. The petitioner acknowledged to the court that his admission that he took money from the victim would not have helped his case. He reiterated, however, that he had not known his brother was planning a robbery.

Trial counsel testified that he was appointed to represent the petitioner in October 2007, after the petitioner had been represented by different counsel for approximately a year. He said the case went to trial at the first available trial date, in April 2008, so that the speedy trial issue never came up during his representation. He met with the petitioner several times before trial, discussing, among other things, the evidence against the petitioner and their defense strategy of attempting to separate the petitioner from his co-defendant by emphasizing the fact that he went to the apartment without any weapons, was not the one who hurt the victims, and appeared reluctant to hurt anyone. Counsel said he also discussed criminal responsibility and explained to the petitioner that the fact that he went to the apartment with his brother to get money from the victims would be "the big hurdle in the case." Counsel stated that he thought he did a good job of separating the petitioner from his brother's violent acts, but it was not enough to "overcome criminal responsibility."

Trial counsel testified that he considered a motion to sever the petitioner's case, but there was no legal basis for doing so, as he explained to the petitioner. He said he and the petitioner also discussed whether or not the petitioner would testify. He explained to the petitioner that the State could use his damaging statements to police to contradict his testimony if he took the stand, but they would not be introduced if he did not testify. The petitioner agreed with his recommendation not to testify, and the post-conviction hearing was the first time that counsel had ever heard him express any desire to testify. Trial counsel testified that he filed some "basic [motions] about Jencks materials [and] hearsay" but did not file a motion to suppress because there was no evidence to suppress. He said he filed the Rule 11 motion one day late because he miscalculated the dates. If he had it to do over, the only thing he would change about his performance was that he would have filed the Rule 11 motion on time.

On cross-examination, trial counsel agreed that the petitioner's statement to police was "very incriminating" but that the State "forewent the use of the statement in order to try [the petitioner and his brother] together." Counsel acknowledged that, in the statement, the petitioner said that he went to the apartment with his brother knowing they were going to take money from the victims by the use of force, that he picked up a portable drill in the apartment, that he pushed Mr. Gift down on the couch and demanded his money, and that he took $200 from Mr. Gift's pocket and more money from the coffee table.[1]

On November 9, 2011, the post-conviction court entered a detailed written order denying the petition for post-conviction relief on the basis of the petitioner's claims of ineffective assistance of counsel but granting him a delayed Rule 11 appeal to the supreme court, with post-conviction counsel appointed as counsel for the appeal. The petitioner appealed the denial of his petition for post-conviction relief to this court, and on January 26, 2012, we entered an order staying the post-conviction appeal pending resolution of the delayed Rule 11 application. We also ordered that, in the event the outcome of the Rule 11 application was not favorable to the petitioner, the post-conviction court conduct a hearing to determine whether the petitioner waived any conflict of interest with his current counsel and whether he intended to amend his post-conviction petition. Our opinion addressing the appeal was filed on February 6, 2013, in which we vacated the judgment of the post-conviction court denying the claims for post-conviction relief and remanded to the court for entry of the proper orders "granting the delayed Rule 11 appeal but holding the post-conviction proceedings in abeyance pending the final disposition of the Rule 11 application." Frederick Alexander Avery v. State, No. M2011-02493-CCA-R3-PC, 2013 WL 451867, at *2 (Tenn. Crim. App. Feb. 6, 2013).

The petitioner's Rule 11 application was denied on February 16, 2012. Following a hearing on March 7, 2012, the petitioner waived any conflict of interest with his current counsel and advised the court that he had chosen not to amend the post-conviction petition regarding any Rule 11 grounds. The petitioner subsequently filed a pro se petition seeking the appointment of new counsel in order to amend his petition. On February 14, 2014, the post-conviction court entered an order denying the petitioner's requests and relying on its previously issued order to deny the petition for post-conviction relief on the basis that the petitioner failed to establish by clear and convincing evidence that trial counsel was defective in his representation or that he had been prejudiced by any alleged deficiency. This appeal followed.

---

[1]The petitioner's statement was apparently made an exhibit to the hearing, but it is not included in the record before this court.

# ANALYSIS

The post-conviction petitioner bears the burden of proving his factual allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner argues that counsel's performance fell below the threshold of competency required of attorneys in Tennessee, resulting in a defense that "was constitutionally flawed" because counsel failed to adequately explain the ramifications and consequences of the petitioner's decision not to testify, overcame the petitioner's will regarding the petitioner's "expressed desire to testify at trial[,]" and failed to advocate for a speedy trial and a severance from the petitioner's co-defendant. The petitioner additionally argues that counsel "simply failed to be prepared for and be in tune with the trial itself during the proof phase, as demonstrated by his failure to object when the prosecution mixed up the names of the [petitioner] and his brother/codefendant David Avery." Finally, the petitioner argues that the fact that counsel missed the deadline for filing the Rule 11 application "reinforces the [petitioner's] position that [counsel] was simply uninterested, unable, and unwilling to properly defend him in the case." The State responds that the post-conviction court properly denied the petition because the petitioner failed to show any deficiency in counsel's performance or resulting prejudice to his case. We agree with the State.

Trial counsel's testimony, which was accredited by the court, was that he met with the petitioner a number of times, discussed the evidence against him and the fact that his statements to police would be damaging if introduced, and strongly recommended that he not testify at trial. The petitioner never expressed any interest in testifying and made the decision not to testify, as evidenced by his signing the waiver of the right to testify and in his responses during his colloquy with the trial court. Trial counsel explained that the speedy trial issue never came up during the period of his representation, as the petitioner proceeded to trial on the first available trial date after he was appointed to the case. Trial counsel also testified that there was no legal basis for filing a motion to sever or a motion to suppress.

In denying the petition, the post-conviction court found, among other things: that "from a strategic point, it behooved [the petitioner] to be tried with his co-defendant" because it kept the petitioner's incriminating statements from being introduced to the jury; that the record demonstrated the petitioner chose not to testify; and that "[n]othing in the record" indicated that trial counsel "failed to meet with the petitioner and keep him

informed of the proceedings." The court, thus, concluded that the petitioner failed to show any deficiency in counsel's performance or any prejudice to his case. The record fully supports the findings and conclusions of the post-conviction court. Accordingly, we affirm the denial of the petition.

## **<u>CONCLUSION</u>**

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE